Argued and submitted August 30, 1991, reversed and remanded for new trial
November 25, 1992

# STATE OF OREGON,
*Respondent,*

*v.*

# CHERYL MARIE OLSON,
*Appellant.*

(89-11-36456; CA A65257)

842 P2d 424

Ingrid A. MacFarlane, Deputy Public Defender, Salem, argued the cause for appellant. With her on the brief was Sally L. Avera, Public Defender, Salem.

Ann Kelley, Assistant Attorney General, Salem, argued the cause for respondent. With her on the brief were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Before Buttler, Presiding Judge, and Rossman and De Muniz, Judges.

BUTTLER, P. J.

## BUTTLER, P. J.

Defendant appeals her convictions on two counts of robbery I, ORS 164.415, two counts of burglary I, ORS 164.225, and one count of aggravated theft I, ORS 164.057, after trial to the court on stipulated facts after denial of her motion to suppress. She assigns error to the denial of that motion, and we reverse.

The facts are undisputed. On November 20, 1989, Deputy Barnum made a valid stop of a car with expired plates. The car delayed pulling over for more than two city blocks after he activated his car's overhead lights, and he noticed the driver and the female passenger (defendant) in the front seat bend over before the car stopped. There was also a female passenger in the rear seat.

Barnum testified that he did not "feel right" about the stop, because of the driver's delay in pulling over and the movements inside the car, and he, therefore, unsnapped the holster holding his service revolver. He asked the driver for his driver's license or proof of identification. The driver said that he had neither. When asked his name, the driver responded, "Ted Wright" and gave his birthdate. Barnum also asked for the automobile registration; the driver said that the car belonged to a friend, and defendant said that it was her brother's. Barnum then asked defendant for her license; she responded that she had none and added that her name was Cheri Marie Howe. Both the driver and defendant appeared to be nervous. The rear passenger was also unable to produce identification.

Barnum ran checks on the two names that the driver and defendant had given him and on the car. The check revealed no information relating to those names and no suspicion that the car was stolen. He arrested the driver for failure to present a driver's license and for having expired tags, frisked him and placed him in the patrol car. The driver then told Barnum that his real name was Loft and that he was an escapee from the state penitentiary.

Because Barnum was unwilling to release the car to defendant, who had no license, he went back to the car to determine her identification. She was then standing at the front of the car, and he told her not to move, but just to stand

there. When she repeated that she did not have any identification, he frisked her and searched her purse. Barnum testified that, if defendant and the other passenger had been able to prove their identities, he would have released them. When the frisk and the search of defendant's purse produced nothing, he searched a bank bag and a paper bag on the floor of the car near the console and then the hatchback area. In the paper bag and the hatchback area, he found check stubs and checks issued in the names of Vera Cole and Eve Leek. Defendant and the other passenger denied that either of those names was theirs. After running a check, Barnum discovered that Vera Cole and Eve Leek had been the victims of a robbery two days earlier. Defendant was wearing a ring that matched the description of a ring stolen during the robbery, and she matched the description of one of the robbers. Barnum arrested her for robbery.

The trial court refused to suppress any of the evidence seized from defendant's person, purse and automobile, concluding that the search was justified, because Barnum had "the basis under these circumstances to ask for ID and to detain that citizen until that question was satisfied."

■ The initial question is when did the officer stop defendant. There is no dispute but that a passenger in an automobile must put up with some inconvenience and delay following a traffic stop without having been "stopped" in the legal sense. However, that is not this case. After the driver had been arrested and taken into custody, the officer went back to the car and told defendant not to move, frisked her and searched her purse for identification. At that point, defendant was not free to leave; she had been stopped. *State v. Spenst*, 62 Or App 755, 662 P2d 5, *rev den* 295 Or 447 (1983).

■ The next question is whether the officer had a reasonable suspicion that defendant had committed a crime. ORS 131.615(1). Although the trial court found that Barnum reasonably suspected that defendant had given him a false name, the officer testified that he did not, at that time, suspect that defendant had committed a crime.[1]

---

[1] Barnum testified:

"Q: Well, at the point when the driver was placed under arrest, would you agree with me that [defendant] was not under suspicion of any crime?

■     Because Barnum did not reasonably suspect that defendant had committed a crime when he stopped and frisked her, he had no authority to stop her. Even if, objectively, he could have had a reasonable suspicion that she had committed a crime, his lack of subjective belief does not permit a finding that he had a reasonable suspicion. *See State v. Owens*, 302 Or 196, 729 P2d 524 (1986). His subsequent search for identification, during which he found the incriminating evidence, was not permissible. The evidence should have been suppressed, unless the officer was authorized to search the car for the *driver's* identification, incidental to his arrest, as the state contends.

The trial court found that Barnum was searching for the identification of defendant and the other passenger. The record supports that finding, and we are bound by it. *Ball v. Gladden*, 250 Or 485, 443 P2d 621 (1968). It did not find that Barnum was also searching for the driver's identification. Although the driver had given a false name at first, he later gave his true name and said that he was an escapee from prison. There could have been no reason for Barnum to believe that that incriminating information was false.

The state contends, finally, that, if we agree with defendant, we should remand for another hearing on the motion to suppress, because there are two theories that the prosecutor raised but for which no evidence was presented. The state should have introduced all of its evidence at the suppression hearing, and we decline to remand for another hearing to present evidence that could and should have been presented at that time.

Reversed and remanded for new trial.

---

"A: *That's correct.*

"Q: *You just detained her so you could find out who she was?*

"A: *That's correct.*

"* * * * *

"Q: Now, when you ordered, or asked [defendant] to get out of the car, *what crime was she under suspicion for?*

"A: *None.*" (Emphasis supplied.)