Argued and submitted October 20, 1993, affirmed April 20, petition for review denied July 5, 1994 (319 Or 281)

In the Matter of the Suspension of
the Driving Privileges of
Kenneth Earl HAUSE,
*Appellant,*

*v.*

MOTOR VEHICLES DIVISION,
*Respondent.*

(92CV-0591; CA A77299)

873 P2d 374

Shaun S. McCrea argued the cause and filed the brief for appellant.

Walter Perry III, Assistant Attorney General, argued the cause for respondent. With him on the brief were Theodore R. Kulongoski, Attorney General, and Virginia L. Linder, Solicitor General.

Before Deits, Presiding Judge, and Riggs, Judge, and Durham, Judge pro tempore.

RIGGS, J.

Durham, J. pro tempore, dissenting.

## RIGGS, J.

Petitioner seeks review of a judgment affirming a final order of the Motor Vehicles Division (MVD) suspending his driving privileges for driving while under the influence of intoxicants. We affirm.

A police sergeant saw petitioner, astride a motorcycle, weaving erratically across two lanes of traffic. The sergeant stopped petitioner and smelled alcohol on his breath. The sergeant called a deputy officer to the scene and asked the deputy to perform a sobriety check. The sergeant then left. Petitioner told the deputy that he had drunk "four or five, six or seven" vodka and grapefruit drinks that day. When the deputy asked petitioner if he felt the vodka's effects, petitioner said, "You bet I do." The deputy administered several field sobriety tests. On those tests requiring balance, petitioner swayed; on those tests requiring proficiency in counting and the alphabet, he became confused. Concluding that petitioner had driven under the influence of intoxicants, the deputy arrested him. At the police station, petitioner took a chemical breath test, which showed a blood alcohol content of .21 percent.

The deputy reported the results of the breath test to MVD, which suspended petitioner's driving privileges. Petitioner requested an Implied Consent hearing, at which he and the deputy were the only witnesses. MVD offered the hearsay testimony of the deputy to establish that the sergeant saw petitioner weaving. Petitioner admitted to weaving, but objected to the admission of the deputy's hearsay testimony. After the hearing, MVD issued an order suspending petitioner's driving privileges for one year. He sought judicial review of the order, and the circuit court affirmed.

On appeal, petitioner argues that the stop was invalid because the *deputy* had no reasonable suspicion to believe that he had been weaving in traffic; he stresses the fact that the deputy did not see him weave. However, MVD must prove only that the *sergeant* who made the stop had a reasonable suspicion that the person stopped has committed a crime. *See* ORS 131.615(1). A police officer who sees erratic driving can form a reasonable suspicion that someone is committing a crime such as driving under the influence. *State v. Wright*, 94

Or App 468, 471, 765 P2d 1251 (1988), *rev den* 307 Or 514 (1989). Here, the sergeant's observations justified the stop.

■        Petitioner argues in the alternative that the deputy should not have been permitted to testify that the sergeant observed him weaving and that this hearsay testimony is insufficient to support the agency's finding that the sergeant had a reasonable suspicion that petitioner had committed a crime. A license suspension hearing is governed by the Administrative Procedures Act (APA) and MVD rules. ORS 813.410(3). Under the APA, a hearings officer can admit "evidence of a type commonly relied upon by reasonably prudent persons in conduct of their serious affairs." ORS 183.450(1). Hearsay testimony may meet this test and may constitute substantial evidence to support an agency's finding. *Reguero v. Teacher Standards and Practices*, 312 Or 402, 822 P2d 1171 (1991).

Reguero sets forth a framework for determining whether hearsay is substantial evidence that supports a finding. That determination is case specific and must take into account countervailing as well as supporting evidence. 312 Or at 418. In making that determination, we examine a number of factors, including

> "the alternative to relying on the hearsay evidence, the importance of the facts sought to be proved by the hearsay statements to the outcome of the proceeding and considerations of economy; the state of the supporting or opposing evidence, if any; the degree of lack of efficacy of cross-examination with respect to the particular hearsay statements; and the consequences of the decision either way." 312 Or at 418.

■        In *Reguero*, the agency's finding was based entirely on the hearsay testimony. Here, other evidence in the record supports the agency's determination. Petitioner himself testified that he may well have been weaving. Also, unlike *Reguero*, there is only slight opposing evidence in the record, and no evidence that casts doubt on the hearsay testimony. Defendant's testimony was that he was weaving because the road was bumpy. Additionally, the consequences of the agency's decision are arguably less severe than the consequences in *Reguero*. *See Pierce v. MVD*, 125 Or App 79, 864 P2d 1355 (1993).

The record does not indicate whether the sergeant was available to testify; thus, we do not know if there was an alternative to relying on the hearsay testimony. In addition, the fact of whether the sergeant saw defendant weave was important to the outcome of the hearing.[1] Nevertheless, after considering the evidence, the alternatives and the consequences, we conclude that the agency's finding was supported by substantial evidence.

Petitioner's other assignments of error do not require discussion.

Affirmed.

**DURHAM, J. pro tempore,** dissenting.

I disagree with the majority's conclusion that MVD's finding that the sergeant had reasonable suspicion to stop petitioner is supported by substantial evidence. The agency relied on hearsay testimony to prove the critical fact in the case, *i.e.*, that the sergeant saw petitioner's motorcycle weave and developed a suspicion that he was driving while intoxicated and was not merely evading potholes, as petitioner claimed. Accordingly, we must engage in a comprehensive analysis of the record to determine whether the evidence relied on by the agency is substantial. Under *Reguero v. Teacher Standards and Practices*, 312 Or 402, 417, 822 P2d 1171 (1991), "we must decide whether the finding of substantiality is reasonable in the light of countervailing as well as supporting evidence." The majority cites *Reguero*, but its misapplication of that case leads to an erroneous result here and jeopardizes the correct application of it in future cases. Unfortunately, that result induces a broader reliance on hearsay in numerous administrative and judicial proceedings where parties contest the facts that give rise to traffic stops.

Under *Reguero*, the first factor in the analysis is the alternative to relying on the hearsay evidence. Here, as in *Reguero*, "there was a convenient and apparently inexpensive alternative to relying on the challenged hearsay." According to the record, the sergeant worked very near the location of the hearing. MVD had the authority to subpoena

---

[1] If the traffic stop was not valid, then the arrest and the ensuing suspension may not be valid. *Pooler v. MVD*, 306 Or 47, 755 P2d 701 (1988).

him. OAR 735-90-050.[1] The agency offered no reason why the sergeant did not testify. "It is beyond question that * * * direct testimony is better evidence than * * * hearsay statements." 312 Or at 419.

Another consideration is the "importance of the facts sought to be proved by the hearsay statements to the outcome of the proceeding." 312 Or at 418. The fact "sought to be proved" in this case was that the sergeant had reasonable suspicion to stop petitioner for DUII. That fact was important to the outcome, because an invalid stop may make the subsequent arrest invalid. *Pooler v. MVD,* 306 Or 47, 52, 755 P2d 701 (1988).

Petitioner admitted to possibly weaving while he drove. However, that does not remove any disadvantage petitioner had from the lack of opportunity to cross-examine the sergeant. Petitioner explained that, if he was weaving, it was an attempt to avoid potholes and the poor road surface. If the sergeant was aware of but disregarded the poor condition of the road, that fact could affect the court's decision on whether he possessed reasonable suspicion to stop petitioner. *See State v. Olson,* 116 Or App 525, 529, 842 P2d 424 (1992); *State v. Harris,* 88 Or App 433, 745 P2d 813 (1987), *rev den* 305 Or 103 (1988). The majority observes that "there is only slight opposing evidence in the record, and no evidence that casts doubt on the hearsay testimony." 127 Or App at 424. That comment is incorrect and misreads *Reguero.* The key disputed fact is whether the sergeant saw petitioner attempt to evade potholes in the road and stopped petitioner because of that innocent conduct, rather than a reasonable suspicion that he was driving while intoxicated. Petitioner's testimony contradicts the fact that the agency desired to prove. Evidence of the sergeant's observations and reasons for acting is uniquely within the sergeant's knowledge, not other witnesses'. For purposes of the *Reguero* analysis, there is no

---

[1] OAR 735-90-050 provides, in part:

"(1) Subpoenas which require the attendance of witnesses or the production of documentary or tangible evidence at a hearing shall be issued by the Hearings Case Management Unit upon receipt of a written request.

"(2) The person who requests the issuance of a subpoena shall be responsible for having the subpoena served * * *."

significance to the fact that other witnesses did not provide evidence about the reason that the sergeant acted.

Finally, we must consider the consequences of the decision. Although, as the majority notes, the loss of a driver's license for a year is arguably less severe than being denied a license to practice a chosen career, this case, like *Reguero*, requires a finding that petitioner engaged in conduct that would constitute a crime. That makes the consequences more severe. *See Reguero v. Teacher Standards and Practices, supra*, 312 Or at 423 (Peterson, J., concurring). Apart from that, I am satisfied that the loss of a driver's license for one year is a severe consequence, within the contemplation of the *Reguero* decision.

Applying *Reguero*, I conclude that, on this record, the critical finding regarding reasonable suspicion to stop petitioner is not supported by substantial evidence.

I dissent.