Argued and submitted April 6, reversed and remanded October 19, 2011, petition for review denied March 22, 2012 (351 Or 675)

STATE OF OREGON,
*Plaintiff-Appellant,*

*v.*

TRAVIS ALLEN BRAUKMAN,
*Defendant-Respondent.*

Washington County Circuit Court
D094352T; A145523

265 P3d 28

Leigh A. Salmon, Assistant Attorney General, argued the cause for appellant. With her on the brief were John R. Kroger, Attorney General, and David B. Thompson, Interim Solicitor General.

John J. Tyner III argued the cause and filed the brief for respondent.

Before Schuman, Presiding Judge, and Wollheim, Judge, and Nakamoto, Judge.

WOLLHEIM, J.

## WOLLHEIM, J.

The state appeals from the trial court's pretrial order granting defendant's motion to suppress evidence of defendant's intoxication discovered after an officer issued defendant traffic citations. The state argues that, under the totality of the circumstances, the officer who stopped defendant for traffic violations had reasonable suspicion that defendant was driving under the influence of intoxicants and, therefore, the officer had a basis for asking defendant if he had been drinking. Because we agree with the state, we reverse and remand.

On an afternoon in August 2009, Officer Ellingsburg was out on patrol in Forest Grove. Ellingsburg saw defendant pull out in front of another car, causing the other car to rapidly put on its to brakes to avoid a collision. As defendant continued driving down the street, Ellingsburg saw defendant make an improper left turn. Ellingsburg stopped defendant for the two traffic violations.

When Ellingsburg approached the car, he saw that defendant had a small dog sitting on his lap, was wearing dark sunglasses, and was eating a hamburger. Defendant continued to eat the hamburger and did not take off his sunglasses while Ellingsburg talked to him. Ellingsburg thought defendant's behavior was odd. Ellingsburg asked defendant for his license, insurance, and registration. Defendant gave Ellingsburg the insurance form and license, but was unable to find his registration. Ellingsburg noticed that defendant's cheeks and neck were flushed and reddish in appearance. Ellingsburg also observed that defendant's movements were slow, lethargic, and "not real[ly] focused." When responding to Ellingsburg's questions, defendant spoke in an unusually low voice. Ellingsburg went back to his car with defendant's information to run checks.

Ellingsburg approached defendant's car again, confirmed defendant's zip code, handed him the citation, and asked defendant if he had been drinking that day.[1] Defendant said that he had had one beer around noon. Ellingsburg

---

[1] It is unclear from the record whether Ellingsburg asked defendant if he had been drinking before or after handing him the citation, but that fact does not affect our analysis.

asked if defendant would be willing to perform some field sobriety tests, and defendant agreed. When defendant took off his sunglasses to do the tests, Ellingsburg noted that defendant's eyes were watery and bloodshot. Defendant failed the sobriety tests and admitted that he had consumed a six-pack of beer before Ellingsburg stopped his car. Defendant said that he probably should not have been driving and that drinking the beer may have made him drive more aggressively.

Defendant was charged with driving under the influence of intoxicants, ORS 813.010. Defendant filed a motion to suppress all the evidence, including his statements, resulting from the warrantless seizure of his person, arguing that Ellingsburg's questioning was outside the scope of the traffic violation stop.

At the hearing on defendant's motion, Ellingsburg testified consistently with the facts as set forth above. Ellingsburg stated that when he stopped defendant, he did not have reasonable suspicion that defendant was driving under the influence of intoxicants; he stopped defendant because he had observed defendant commit two traffic violations. Ellingsburg testified that defendant's flushed skin, slow movements, and inability to find paperwork were signs of impairment and that all of the circumstances led him to reasonably suspect that defendant was driving under the influence of intoxicants. A second officer who assisted in the arrest testified that defendant's flushed skin did not appear to be from sunburn.

The court found that, when Ellingsburg stopped defendant for the traffic violations, that was a lawful stop. The court found Ellingsburg's testimony to be credible. The court said that it was odd for defendant to be wearing sunglasses, be eating, and have a dog on his lap. The court also found that defendant could have been flushed from the heat of the day. The court stated, "But we don't have anybody here that gives us the scientific difference between how you look when you're hot and how you look when your skin is affected by alcohol." Based on its findings and statement about defendant's flushed skin, the court concluded that Ellingsburg did not have reasonable suspicion to extend the traffic stop by

asking defendant if he had been drinking alcohol. Consequently, the court granted defendant's motion to suppress.

When reviewing a trial court's decision to grant a motion to suppress, "we are bound by the trial court's factual findings when there is evidence in the record that supports those findings, and we review the trial court's legal conclusions based on those findings for errors of law." *State v. Gaither*, 196 Or App 131, 135-36, 100 P3d 768 (2004), *rev den*, 338 Or 488 (2005). If the court did not make findings on all facts, we will presume the court decided the facts consistently with its ultimate conclusion. *Ball v. Gladden*, 250 Or 485, 487, 443 P2d 621 (1968).

On appeal, the state asserts that the trial court erred in granting defendant's motion to suppress, because, under the totality of the circumstances, Ellingsburg had reasonable suspicion to believe that defendant was driving under the influence of intoxicants. Defendant responds that under *Ball*, 250 Or 485, this court is bound by the trial court's factual findings and the trial court was correct in granting the motion to suppress because Ellingsburg lacked reasonable suspicion. We agree with the state.

Whether the officer had reasonable suspicion to justify the continued stop is a question of law. *State v. Walker*, 181 Or App 548, 551, 47 P3d 65 (2002). Reasonable suspicion is a relatively low barrier. *State v. Jones*, 245 Or App 186, 263 P3d 344 (2011). To determine whether an officer's suspicion is reasonable, we look at the "inferences drawn from the particular circumstances confronting the officer, viewed in the light of the officer's experience." *State v. Ehly*, 317 Or 66, 80, 854 P2d 421 (1993). "If a police officer is able to point to specific and articulable facts that give rise to a reasonable inference that a person has committed a crime, the officer has 'reasonable suspicion' and hence may stop the person for investigation." *Id.* (quoting *State v. Valdez*, 277 Or 621, 561 P2d 1006 (1977)). "The possibility that there may be a noncriminal explanation for the facts observed or that the officer's suspicion will turn out to be wrong does not defeat the reasonableness of the suspicion." *State v. Kolendar*, 100 Or App 319, 323, 786 P2d 199, *rev den*, 309 Or 698 (1990).

Under ORS 810.410(3)(b), a police officer may "stop and detain a person for a traffic violation for the purposes of investigation reasonably related to the traffic violation, identification and issuance of citation." Here, the court found, and the parties agree, that the initial stop was lawful. The question is whether the continued stop, when the officer asked defendant if he had been drinking, was lawful. In *State v. Rodgers/Kirkeby*, 347 Or 610, 623, 227 P3d 695 (2010), the Supreme Court explained:

> "Police authority to detain a motorist dissipates when the investigation reasonably related to that traffic infraction, the identification of persons, and the issuance of a citation (if any) is completed or reasonably should be completed. Other or further conduct by the police, beyond that reasonably related to the traffic violation, must be justified on some basis other than the traffic violation."

(Emphasis omitted.) The state argues that, when Ellingsburg extended the stop by asking defendant if he had been drinking that day, that extension was justified because the officer had objective and subjective reasonable suspicion that defendant was driving under the influence of intoxicants.

Indications that a driver is impaired come in many ways, and there is no requirement that the driver's actions be themselves unlawful in order to support a reasonable inference that a crime is being committed. *State v. Sulser*, 127 Or App 45, 48, 871 P2d 126 (1994); *State v. Wright*, 94 Or App 468, 471, 765 P2d 1251 (1988), *rev den*, 307 Or 514 (1989). Here, the indications that defendant was driving while impaired included his flushed appearance, his slow and lethargic movements, and the fact that his responses to Ellingsburg were in an unusually low voice. Ellingsburg had also observed defendant committing two traffic violations. In addition, Ellingsburg said that he thought it was odd that defendant had a dog on his lap, was wearing dark sunglasses, and continued eating a hamburger while Ellingsburg asked him questions.

During the hearing, defendant made much of the fact that Ellingsburg did not smell alcohol, but the odor of alcohol, or the lack thereof, is not dispositive. There are many other factors that may indicate when a defendant has been

consuming alcohol. Indeed, the Supreme Court has taken judicial notice that a flushed appearance is an observable symptom of alcohol intoxication. *State v. Clark*, 286 Or 33, 39, 593 P2d 123 (1979). Here, the court also said that there could have been reasons other than drinking that caused defendant to be flushed. But, as we stated in *State v. Kusaj*, 174 Or App 575, 580, 28 P3d 1182 (2001), *rev den*, 333 Or 400 (2002), "the fact that there may be reasons other than being intoxicated" that could explain defendant's appearance "does not negate the fact that the officer suspected that defendant was driving while intoxicated and that the facts before him at the time justified a stop of defendant's vehicle to permit an inquiry that would confirm or deny his suspicion." Under the totality of the circumstances, we conclude that Ellingsburg was able to point to specific and articulable facts that give rise to a reasonable suspicion that defendant had committed the crime of driving under the influence of intoxicants. Consequently, Ellingsburg had reasonable suspicion to ask defendant whether he had been drinking that day, and the trial court erred in granting defendant's motion to suppress.

Reversed and remanded.